## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRENCE STEVENSON, | : | Civil No. 1:23-cv-00573-JPW |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID ELLIS, in his official capacity and individually, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a motion, filed by Defendant David Ellis ("Ellis") to dismiss the complaint of Plaintiff James Stevenson ("Stevenson"). (Doc. 3.) Ellis's motion will be granted, and Stevenson's complaint will be dismissed without prejudice, because he is unable to plead facts that assert a cognizable § 1983 action or related state law claims. (Doc. 1-2.) For these reasons, this Court will grant in the motion to dismiss. (Doc. 3.)

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Stevenson initiated this action by filing a complaint on February 22, 2023 in Franklin County, Pennsylvania. (Doc. 1-2.) Stevenson alleges that Defendant, Trooper David Ellis, individually and in his official capacity as Field Training Officer at the Pennsylvania State Police ("PSP") Chambersburg Barracks, has

---

[1] Any additional factual recitation that is necessary for the discussion is included in the Discussion section of this memorandum.

violated his constitutional rights pursuant to the Civil Rights Act of 1871, along with other state law claims.  (*See id*.)  Stevenson brings three counts against Ellis under 42 U.S.C. §§ 1981 and 1983 for discrimination, hostile work environment, and conspiracy (Count I); retaliation (Count II); intentional infliction of emotional distress under Pennsylvania law (Count III); and one claim under Pennsylvania law for invasion of privacy (Count IV).  (*See id*.)

These claims primarily arise out of Stevenson's experience during his first week at PSP Chambersburg Barracks while under the supervision of Ellis.  (*Id*. ¶ 6.)  During this training period, Stevenson alleges that Ellis repeatedly referred to him as his "black pupil," commented that he hated all "nigg*rs," mentioned that "minorities and women do not deserve to be troopers," and pressured Stevenson to file two false DUI reports against suspects, which Stevenson refused to do out of ethical concerns.  (*Id*. ¶¶ 6–11.)

Later, Stevenson began working under a different trooper, who did not "make any derogatory and racist comments similar to Defendant Ellis."  (*Id*. ¶ 12.)[2] Stevenson would eventually report Ellis's conduct to supervisors when they inquired about the outstanding DUI reports.  (Doc. 1-2, ¶ 12.)  Although fearing retaliation if he reported Ellis's "multiple EEO violations," on the morning of

---

[2] The complaint mentions various PSP troopers by name; however, these third parties are incidental to the analysis with respect to Ellis and are not discussed for that reason.

October 19, 2021, Stevenson spoke to other supervising troopers regarding the conduct of his former supervisor.  (*Id.* ¶ 15.)  Mere moments after speaking with the interviewer, Ellis "approached Mr. Stevenson" and "attempted to solicit information . . . regarding the active investigation into [Ellis]'s conduct."  (*Id.* ¶ 16.)  Stevenson declined to respond, and asserts that he felt "intimidated" by the confrontation.  (*Id.*)

The complaint also details the actions of various other PSP troopers, who are not named as defendants, and who continued to inquire about the outstanding DUI reports that Stevenson failed to complete due to his ethical concerns.  (*Id.* ¶¶ 17–26.)  Apparently, the named troopers who apparently harassed and pressured Stevenson to file false police reports, or otherwise failed to take Stevenson's concerns seriously, bore no relation to Ellis besides their common employment. Stevenson details numerous instances in which troopers other than Ellis engaged in allegedly discriminatory, hostile, and retaliatory conduct in the wake of Stevenson's EEO complaint.  (*Id.* ¶¶ 19–32.)  Stevenson alleges that the PSP never took corrective action against Ellis based on his complaint.  (Doc 1-2, ¶ 38.)[3]

Stevenson filed a lawsuit in this district on March 24, 2022 for employment discrimination against the PSP itself, a number of PSP troopers, and Ellis.  (*Id.* ¶

---

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

34.)  Ellis would later be dismissed as a defendant in that action pursuant to an order issued on April 24, 2023, due to Stevenson's failure to serve notice.  *See Stevenson v. Pennsylvania State Police*, No. 1:22-CV-0445, Docs. 23, 24 (M.D. Pa. April 24, 2023) ("PSP Action").[4]

On February 22, 2022, Stevenson filed a complaint in the Franklin County Court of Common Pleas, which named Ellis as the sole Defendant.  (Doc. 1-2.)  Ellis subsequently removed the case to this court on April 4, 2022.  (Doc. 1.)  On April 11, 2023, Ellis filed a motion to dismiss followed by a brief in support. (Docs. 2, 3.)  Stevenson opposed the motion on June 15, 2023, and Ellis filed a reply brief on June 29, 2023.  (Docs. 6, 9.)  Thus, this motion is ripe for review.

## JURISDICTION

This court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), and 1367(a).  Venue in the middle district is proper pursuant to 28 U.S.C. § 1391, insofar as the alleged conduct asserted in the complaint arose within the jurisdictional limits of this district.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

---

[4] This case was assigned to United States District Judge Christopher C. Conner.

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

<div align="center">

**DISCUSSION**

</div>

### A. The Doctrine of *Lis Pendens* Does Not Bar the Present Action.

At the outset, Ellis argues that the present action must be dismissed under the doctrine of *lis pendens*, because the current action and the PSP Action, have the same claims, the same facts, the same relief sought, and the same defendant.[5] (Doc. 3, p. 12.)  Stevenson responds by arguing that because the prior action dismissed Ellis as a defendant, he no longer has a valid *lis pendens* claim.  (Doc. 6,

---

[5] This court is permitted to consider the documents filed in *Stevenson v. Pennsylvania State Police, et al.*, No. 1:22-CV-0445 because those filings are a matter of public record. *See Witasick v. Minn. Mut. Life Ins. Co.,* 803 F.3d 184, 192 (3d Cir. 2015) (citation omitted).

p. 3.); (PSP Action, Doc. 24.)  In fact, Ellis did have two pending cases against him from the time period when the instant case was filed until his dismissal from the PSP Action.[6]  Therefore, the issue raised here is whether *lis pendens* applies to a defendant who had a prior action dismissed, but nevertheless made a timely argument while the prior action was pending.

Before a district court may dismiss a case under a *lis pendens* theory, the defendant must show that the newer suit involves "the same parties, the same relief requested, the same causes of action, and the same rights asserted."  *Barren v. Commonwealth,* 74 A.3d 250, 253 (Pa. Super. 2013); *see also Crutchfield v. Eaton Corp.,* 806 A.2d 1259, 1262 (Pa. Super. 2002).  The purpose of *lis pendens* is to "protect a party from being forced to litigate the same issues in several suits at the same time."  *Barren,* 74 A.3d at 253.  (citing *Penox Techs., Inc. v. Foster Med. Corp.*, 546 A.2d 114, 115 (Pa. Super. 1988)).  The doctrine also "prevents the appearance of the inequitable administration of law that would occur if two cases litigating the same issues in different counties reached different results," and "serves the purpose of saving judicial resources."  *Id.* (citing *Norristown Auto. Co. v. Hand*, 562 A.2d 902, 904 (Pa. Super. 1989)).

---

[6] The instant case was removed from Franklin County on April 4, 2023, and Ellis was dismissed from the PSP Action on April 24, 2023.  Ellis first raised his *lis pendens* argument in the pending motion to dismiss on April 11, 2023 and filed his brief in support on April 25, 2023.  (Doc. 2, ¶ 41.)

Here, Ellis clearly had a potentially meritorious *lis pendens* argument from the time Stevenson filed the instant complaint naming Ellis as a defendant, until such time that Ellis was dismissed as a defendant in the PSP Action.  (PSP Action, Doc. 24.)  Thus, Ellis had a 19-day window within which to assert *lis pendens* as a basis for dismissal in this action.  However, this window closed on the date when he was dismissed from the PSP Action.  Because Ellis no longer has a pending case against him, the defense of *lis pendens* is no longer available.  Ellis provides no authority suggesting that the plain language of the doctrine would lead to any other result.  And the purpose of the doctrine is no longer implicated because Ellis is no longer prejudiced by needing to defend himself in two pending actions, and the judiciary no longer risks reaching conflicting judgments on the same controversy.  Thus, the court concludes that the present action is not barred by the doctrine of *lis pendens* because there is no longer a unity of parties present in this case and the PSP Action.

### B.  Count I - Discrimination, Hostile Work Environment and Conspiracy

#### 1.  Plaintiff Fails to State a Claim of Discrimination.

Stevenson asserts a violation of equal protection against Ellis pursuant to § 1983 by alleging that Ellis denied his rights to the "same terms, conditions, privileges and benefits of . . . employment with the Pennsylvania State Police." (Doc. 1-2, ¶¶ 48–51.)  Moreover, Stevenson alleges that Ellis, as supervisor,

targeted him because of race; instructed him to fill out false and discriminatory reports; used racial epithets; and intimidated and confronted him when Ellis learned that he reported this discriminatory conduct.  (*Id*. ¶¶ 50–51.)  In response, Ellis argues that Stevenson failed to adequately plead his equal protection claim because the allegations are conclusory and are based on the conduct of other PSP troopers, not Ellis.  (Doc. 3, pp. 14–15.)

To state a claim for racial discrimination under § 1983, generally a plaintiff must satisfy the same elements as required for a Title VII discrimination claim.  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 n.1 (1993); *accord Stewart v. Rutgers St. Univ.,* 120 F.3d 426, 432 (3d Cir. 1997).  Courts in the Third Circuit rely on the *McDonnell Douglas* framework, which requires a plaintiff to show the following to establish a prima facie case of discrimination:

> (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position.

*Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).  With respect to the third element of discrimination claims, an "adverse employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits." *Pagan v. Gonzalez,* 430 F. App'x 170, 172 (3d Cir. 2011).

Stevenson fails to establish the third and fourth elements of the framework because he fails to show an "adverse employment action" that could raise an inference of discriminatory action with respect to Ellis.  Stevenson alleges that his probationary period was extended due to the conduct of certain PSP officers other than Ellis.  (Doc. 1-2, ¶¶ 18–22.)  Moreover, a trooper other than Ellis filed a negative write-up in Stevenson's employee file as a result of his reported failure to complete certain police reports (which Stevenson alleges to be false reports).  (Doc. 1-2, ¶¶ 19–21.)  While Stevenson clearly alleges that he was written up because he refused to file a false report, this "adverse employment action" was perpetuated by a trooper other than Ellis.  (*Id.* ¶ 26.)

Stevenson does not allege that Ellis was responsible for the conduct of the other troopers about which he complains.  There is no mention in the complaint that Ellis's position provides him with the authority to direct the conduct of the other named troopers.  As such, Stevenson fails to establish circumstances that raise an inference of discriminatory action by Ellis.  *See Pagan,* 430 F. App'x at 172.

Therefore, this claim will be dismissed because Stevenson has failed to provide facts which establish the third and fourth elements of the prima facie case for discrimination under § 1983.

### 2. Plaintiff's Hostile Work Environment Claim Against Ellis Fails.

Stevenson next asserts a claim of hostile work environment against Ellis pursuant to § 1981 through § 1983. (Doc. 1-2, ¶¶ 48–51.) Specifically, Stevenson argues that Ellis ultimately triggered a "chain of events" that led to the imposition of a hostile work environment perpetuated by other troopers. (*Id.* ¶¶ 50–51.) Ellis argues in response that a plaintiff must present facts regarding the "defendant's personal involvement in the alleged discriminatory conduct at issue" to successfully plead a case of hostile work environment pursuant to § 1983, and he claims that Stevenson has alleged that other PSP employees engaged in the discriminatory conduct at issue. (Doc. 3, p. 16.)

Stevenson offers no authority to support a "chain reaction" theory of liability under § 1983 for a hostile workplace action. (*See* Doc. 6, p. 5.) The law requires a plaintiff to establish that the hostile workplace is attributable to the defendant's conduct. *Johnson v. Res. for Human Dev.,* 843 F. Supp. 974, 978 (E.D. Pa. 1994). Therefore, Stevenson's chain reaction theory of hostile workplace is not viable.

In the Third Circuit, in order to plead a hostile work environment claim, a plaintiff must show that "(1) [he] suffered intentional discrimination because of

10

[his race], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability."   *In re Tribune Media Co.,* 902 F.3d 384, 399 (3d Cir. 2018) (citation omitted); *see also Castleberry v. STI Grp.,* 863 F.3d 259, 263, 265 (3d Cir. 2017) (holding that a § 1983 plaintiff must plead discrimination which is either severe or pervasive).

Courts have held that the "analysis of whether a hostile work environment exists is the same under Title VII . . . and § 1981." *Id.* at *12 n.17 (citing *Weston v. Pennsylvania Dep't of Corrections,* 251 F.3d 420, 426 n.3 (3d Cir. 2001) *overruled in part on other grounds* by *Burlington,* 548 U.S. at 53).  In determining whether a hostile work environment exists, a court must look at the "totality of the circumstances." *Castleberry*, 863 F.3d at 264.  Additionally, to bring claims under §§ 1983 or 1981, a plaintiff must show that the defendant had "personal involvement" in the alleged civil rights violations.  *Solan v. Ranck*, 326 F. App'x 97, 100–101 (3d Cir. 2009); *Johnson*, 843 F. Supp. at 978.

Ellis's alleged conduct is likely severe enough to satisfy the second element of a hostile work environment claim.  The allegations against Ellis include his references to Stevenson as his "black pupil;" pressuring him to complete false reports against minority suspects; Ellis's comment regarding his hatred of

11

"nigg*rs"; Ellis's repeated lamentations of "women and minorities" becoming PSP Troopers; and Ellis's confrontation regarding Stevenson's interview with internal affairs.  (See Doc. 1-2, ¶¶ 5–11, 15, 17.)  Based on these allegations, Stevenson plausibly pleads intentional discrimination with the requisite severity.

The Third Circuit has acknowledged that a single isolated incident may constitute a hostile work environment, and has looked at other circuits, which have observed that "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as the "n-word" by a supervisor in the presence of his subordinates . . . that impacts the work environment severely."  *Castleberry*, 863 F.3d at 264–65 (cleaned up) (quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)).

But Stevenson has not established the third element of a hostile work environment claim because he has not alleged that Ellis's conduct caused "an objective change in the conditions of employment" against Stevenson.  *Tannous v. Cabrini U.*, No. 23-1115, 2023 WL 6465842, at *6 (E.D. Pa. Oct. 4, 2023) (quoting *Abramson v. William Paterson Coll. Of N.J.,* 260 F.3d 265, 280 (3d Cir. 2017)) (explaining the standard for a hostile work environment action prevents cases from proceeding when the defendant's actions fail to alter the conditions of the plaintiff's employment).  Plaintiff alleges instances of discriminatory conduct

12

by Ellis, but fails to allege any connection between Ellis's conduct and a "detrimental effect" suffered by Stevenson in satisfaction of the third element of a hostile work environment action.  Although the comments alleged made by Ellis during Stevenson's initial period of training are discriminatory and harassing, the claim fails because Ellis's comments do not amount "to a change in the terms and conditions of employment." *Faragher,* 524 U.S. at 788.  Stevenson offers no facts suggesting that Ellis's conduct was so harmful that it materially altered his working conditions.  Because Stevenson has not established that Ellis's conduct resulted in a "detrimental effect" to Ellis, the motion to dismiss Count I will be granted regarding Stevenson's hostile work environment claim.

### 3.  Plaintiff's Fails to State a Claim of Conspiracy.

Stevenson asserts a claim of conspiracy against Ellis pursuant to § 1983 by reiterating Ellis's alleged conduct and claiming that Ellis conspired to deny Stevenson's rights to the "same terms, conditions, privileges and benefits of . . . employment with [PSP]."  (*Id.* ¶¶ 48–51).  Additionally, Stevenson mentions various other PSP troopers as co-conspirators who allegedly worked in concert with Ellis to deny Stevenson's rights.  (*Id.* ¶¶ 19–35.)

Ellis responds by arguing that Stevenson has failed to state a claim for a § 1983 conspiracy action because Stevenson must name other defendants as co-conspirators in the complaint, and that Stevenson provided no facts suggesting the

other identified troopers worked in concert with Ellis to deprive Stevenson of his rights.  (Doc. 3, pp. 7, 13, 18–19.)  Ellis also avers that Stevenson failed to identify overt acts in furtherance of the conspiracy.  (*Id*. at 20.)

To successfully plead a § 1983 conspiracy action, a plaintiff must allege "that persons acting under color of state law conspired to deprive him of a federal protected right."  *Ashton v. City of Uniontown,* 459 F. App'x 185, 191 (3d Cir. 2012) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)).  Specifically, in order to establish a prima facie case, the plaintiff must allege that:

> (1) two or more persons conspire to deprive any person of constitutional rights; (2) one or more of the conspirators performs an overt act in furtherance of the conspiracy; and (3) that overt act causes an injury to the plaintiff's person or property or deprives the plaintiff of a right or privilege of a citizen of the United States, with the added gloss...that (4) the conspirators act 'under the color of state law.'

*Wright v. Whitehall Twp.,* No 5:20-cv-2664, 2021 WL 100091, at *11 (E.D. Pa. Jan. 12, 2021) (cleaned up) (quoting *Jutrowski v. Twp. Of Riverdale,* 904 F.3d 280, 293 (3d Cir. 2019)).  Additionally, a conspiracy claim that is based solely on a plaintiff's own suspicion or speculation is insufficient to state a claim for conspiracy.  *Young v. Kann,* 926 F.2d 1396, 1045 n.16 (3d Cir. 1991).  Moreover, a plaintiff must plead an actual violation of a constitutional right under § 1983 in addition to evidence of the conspiracy.  *Perano v. Twp. of Tilden,* 423 F. App'x 234, 239 (3d Cir. 2011).  Finally, "mere conclusory allegations of deprivations of

constitutional rights are insufficient to state a claim for conspiracy." *Tindell v. Beard,* 351 F. App'x 591, 594 (3d Cir. 2009) (quoting *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir. 1989)).

Here, Stevenson fails to meet the elements of the prima facie § 1983 conspiracy claim.  As a threshold matter, Stevenson must allege that he suffered a deprivation of his rights due to the overt act(s) of the conspirators.  *See Perano,* 423 F. App'x at 239.  As explained above, Stevenson has not successfully pleaded that Ellis violated his rights and is thus unable to satisfy this requirement of a civil conspiracy claim.  In any event, the complaint also does not adequately allege the existence of a conspiracy.  Stevenson alleges that after he reported Ellis's conduct to the EEO, Ellis confronted Stevenson regarding the ensuing investigation. Stevenson asserts that this was an act in furtherance of the conspiracy.  However, this confrontation by Ellis is not itself sufficient to plausibly allege the existence of a conspiracy.  Stevenson invites the court to speculate that Ellis worked in concert with the troopers responsible for investigating Stevenson's internal complaint, and Ellis therefore knew when to confront Stevenson about his interview.  But mere speculation that Ellis conspired with other is not sufficient.  *See Young,* 926 F.2d at 1045 n.16.

Because Stevenson has neither established that Ellis participated in a conspiracy to deprive Stevenson of his constitutional rights or that a constitutional

violation occurred, Stevenson's claim alleging a § 1983 conspiracy will be dismissed.

### C. Count II - § 1983 Retaliation

Stevenson asserts a claim of retaliation pursuant to § 1983 against Ellis, claiming that Ellis violated the 14th Amendment by retaliating against Stevenson for "speaking out on matters of public concern" while they were both serving as troopers. (*Id.* ¶¶ 55–61.)

In response, Ellis argues that the allegedly retaliatory conduct of which Stevenson complains was taken by other PSP troopers, not Ellis. Ellis points out that the complaint's factual allegations against Ellis consist of his (1) racial slurs, (2) pressure to write false reports, and (3) intimidation. But Ellis maintains that these allegations lack a requisite causal link to any protected activity and therefore cannot be considered retaliatory. (Doc. 9, pp. 11–12.)

To prevail on a claim of retaliation pursuant to § 1983, a plaintiff "must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) (citing *Phyllis Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)); *Flora v. Cty. of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015). Public employees, such as police officers, engage in protected conduct protected when:

(1) in making [a statement], the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he [or she] made.

*Lahovski v. Rush Twp.,* 441 F. Supp. 3d 43, 53 (M.D. Pa. 2020) (quoting *Flora,* 776 F.3d at 174).

A public employee's speech will not receive First Amendment protection when the employee merely raises administrative complaints that allege discriminatory practices that affect only the complainant, rather than the broader community.  *Id.*; *see also Borough of Duryea v. Guarnieri*, 564 U.S. 379, 398 (2011) (holding that "[a] petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context").  The Supreme Court has instructed courts to look to the "content, context, and form of a given statement, 'as revealed by the whole record,'" when determining whether an issue is a matter of public concern.  *DeGroat,* 87 F. Supp. 3d at 719 (citing *Connick v. Myers,* 461 U.S. 138, 147–48, 154 (1983)).  It has further held that "employee complaints or resentments, . . . are not the province of a constitutional action."  *Connick,* 461 U.S. at 147–48, 154.

Here, Stevenson's allegations, viewed in the light most favorable to him, consist of an internal complaint of harassment and discrimination by Ellis against

17

him.  He did not complain that Ellis engaged in a pattern of conduct directed at others.  (*See* Doc. 1-2.)  Stevenson does allege that Ellis stated in his presence that he "hated all nigg\*rs," commented that "minorities and females do not deserve to be troopers," and pressured Stevenson to file false reports against racial minorities. (*Id.* at ¶¶ 9–10.)  But these instances do not establish that Stevenson's internal complaint constituted speaking on a "matter of public concern," because Stevenson complained about Ellis targeting him personally.  (*Id.* at ¶¶ 10–11.)

In addition, Stevenson alleges that he informed other troopers of his ethical concerns regarding Ellis and "potential violation of defendants' rights," but these conversations also do not constitute speech about a "matter of public concern." (*Id.* at ¶ 12.)  Stevenson's comments to other troopers about his concerns is a "merely personal grievance and [does] not constitute a speech of public concern." *DeGroat v. DeFabo,* 87 F. Supp. 3d 706, 719 (M.D. Pa. 2015) (citing *Feldman v. Phila. Hous. Auth.,* 43 F.3d 823, 829 (3d Cir. 1994).

Because Stevenson has not adequately pleaded that he engaged in protected speech, Ellis's later confrontation following Stevenson's EEO interview cannot be considered retaliation.  (Doc. 1-2, ¶ 16.)  Stevenson's claim of retaliation pursuant to § 1983 will be dismissed for this reason.

### D. Count III – Plaintiff's claim of IIED

Stevenson asserts a claim of IIED against Ellis on the basis that Ellis "used racial epithets . . ., targeted him because of his race, instructed him to fill out false and discriminatory reports," used the "n-word," and finally "intimated Mr. Stevenson by questioning and confronting him" about Stevenson's report.  (*Id.* ¶ 64.)  Stevenson argues that Ellis's conduct was "outrageous" because Ellis intimidated, harassed, and threatened Stevenson while in a supervisory position. (Doc. 1-2, ¶ 64.)  In response, Ellis argues that the alleged conduct was not "outrageous" as a matter of law because the alleged conduct is the type of "indignity, threat, or annoyance" that does not rise to the level of extreme or outrageous conduct necessary to support an IIED claim.  (Doc. 3, p. 22.)

A plaintiff must satisfy four elements to maintain a claim for IIED: (1) the alleged conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe.  *Williams v. Guzzardi,* 875 F.2d 46, 52 (3d Cir. 1989).  The standard is difficult to satisfy, and "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" are insufficient to sustain an IIED claim. *Shumate v. Twin Tier Hosp., LLC,* 655 F. Supp. 2d 521, 542 (M.D. Pa. 2009) (quoting *Bowersox v. P.H. Glatfelter Co.,* 677 F. Supp. 307, 310 (M.D. Pa. 1988)).

19

Generally, racial discrimination is insufficient to state a claim for IIED. *See Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir. 1988); *Nichols v. Acme Mkts., Inc.,* 712 F. Supp. 488, 495 (E.D. Pa. 1989), *aff'd*, 902 F. 2d 1561 (3d Cir. 1990). Specifically, a hostile work environment, workplace racial discrimination, retaliation, harassment, and highly provocative racial slurs have not been sufficient to sustain IIED claims as a matter of law. *See e.g., Barbosa v. Tribune Co.*, No. Civ. A. 01–1262, 2003 WL 22238984, at *6 (E.D. Pa. Sept. 25, 2003); *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir. 1988); *Ferrell v. Ashcombe Dover Homeowners Ass'n,* No. Civ. A. 1:07-CV-2324, 2009 WL 811714, at *7 (M.D. Pa. Mar. 26, 2009) (holding that even "reprehensible" racial slurs or discrimination do not establish the prima facie element of outrageousness).

Under Pennsylvania law, instances of racial discrimination have been found to be tantamount to "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" that cannot meet the level of outrage required to raise an IIED claim. *Shumate,* 655 F. Supp. 2d at 543 (quoting *Bowersox,* 677 F. Supp. at 310).

This IIED claim will be dismissed because Stevenson's allegations of Ellis's conduct constitute workplace-related racial discrimination, Stevenson fails to establish the outrageous element of an IIED claim.

**E. Count IV – Invasion of Privacy**

Stevenson asserts a claim of invasion of privacy against Ellis by reiterating

his allegations and asserting that Ellis's conduct amounted to an "intrusion upon

seclusion." (Doc. 1-2, ¶¶ 67–71.) In response, Ellis argues that the

aforementioned conduct does not meet the level of "highly offensive conduct"

which furnishes a valid intrusion upon seclusion claim. (Doc. 3, p. 24.) Therefore,

Stevenson has failed to state a cognizable claim of intrusion because Ellis's alleged

conduct was not "highly offensive to a reasonable person." (*Id*.) (quoting *Pro Golf*

*Mfg., Inc. v. Trib. Rev. Newspaper Co.,* 809 A.2d 243, 247 (Pa. 2002)).

An action for invasion of privacy is composed of four torts, one of which is

intrusion upon seclusion. *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377,

1383 (Pa. Super. 1984) (citing *Marks v. Bell Tel. Co. of Pa.*, 331 A.2d 424, 430

(Pa. 1975)). To establish an intrusion upon seclusion claim there must be a

defendant who invaded the affairs of a plaintiff. *Id.*; citing Restatement (Second)

of Torts § 652B. The invasion may be established "(1) by physical intrusion into a

place where the plaintiff has secluded himself, (2) by use of the defendant's senses

to oversee or overhear the plaintiff's private affairs, or (3) some other form of

investigation or examination into plaintiff's private concerns." Restatement

(Second) of Torts § 652B, comment b. A defendant will be liable only if the

intrusion on plaintiff's "seclusion is substantial and would be highly offensive to the ordinary reasonable person." *Id.* at comment d.

Whether a reasonable person would consider an invasion of a privacy interest "offensive" requires considering "the degree of the intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Wolfson v. Lewis*, 924 F. Supp. 1413, 1421 (E.D. Pa. 1996) (quoting *Hill v. NCAA*, 865 P.2d 633, 648 (Cal. 1994)). The "highly offensive" standard is a matter of law that courts must consider at the pleading stage. *Doe v. Hosp. of Univ. of Pa.,* 546 F. Supp. 3d 336, 352 (E.D. Pa. 2021); *Boring v. Google Inc.*, 362 F. App'x 273, 279 (3d Cir. 2010) (holding that courts may determine what would be "highly offensive to a person of ordinary sensibilities" at the motion to dismiss stage).

Here, Stevenson cites *Wolfson* in support of his intrusion upon seclusion claim. (Doc. 6, pp. 7–8.) But Stevenson's allegation that Ellis intentionally intruded in a manner that is comparable to the conduct at issue in *Wolfson* is incorrect. In *Wolfson,* the plaintiff alleged that defendants repeatedly harassed him and his family by showing up at their home, uninvited over an extended period of time. The court held that the plaintiffs stated a valid claim by alleging that the defendants, a team of investigative journalists, engaged in "tortious stalking,

harassment, trespass, and intrusion upon section," because "a reasonable jury could well find that [defendants] intentionally intruded, in a manner that would be highly offensive to a reasonable person, upon the solitude and seclusion of the [plaintiffs] by engaging in a course of conduct apparently designed to hound, harass, intimidate and frighten them." *Wolfson,* 924 F. Supp. at 1421.

By contrast, Stevenson asserts only a single instance of potential intrusion, when Ellis confronted Stevenson about his EEO complaint immediately after the EEO interview. (Doc. 1-2, ¶ 15.) In the court's review, a reasonable jury would not consider it "highly offensive" for a supervisor to confront an employee about an internal complaint. It is not comparable to a team of investigative journalists engaging in a pattern of stalking and harassment in order to determine and expose the salary of a household. *See Wolfson,* 924 F. Supp. at 1421. "No person of ordinary sensibilities would be shamed, humiliated or have suffered mentally" because a supervisor privately questioned his subordinate over the substance of an internal interview. *Boring*, 362 F. App'x at 279 (highlighting the fact that the "highly offensive" element of an intrusion claim is a significant hurdle).

Moreover, Stevenson pleads that he was merely "intimidated" when Ellis confronted him regarding his interview. (*Id.* at ¶ 70.) Mere intimidation is not shame, humiliation, or mental suffering as required by the "highly offensive" standard required for an intrusion claim. Therefore, Stevenson's claim of invasion

of privacy alleging that Ellis committed the tort of intrusion upon seclusion is without merit because it does not establish any of the elements of invasion of privacy based on intrusion upon seclusion.  For that reason, the claim will be dismissed.

<div align="center">

### CONCLUSION

</div>

For the reasons detailed herein, the court finds Stevenson's complaint fails to plead cognizable actions on all Counts and they will therefore be dismissed without prejudice.  An appropriate order will follow.

<div style="margin-left: 40%;">

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

</div>

Dated:  December 22, 2023